UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALBRIDGE ALDINGER COMPANY,
for the use and benefit of
PROSPECT STEEL COMPANY,

      Plaintiff,         Case Number 05-73665
v.                    Honorable David M Lawson

CBN STEEL CONSTRUCTION, INC.,
UNITED STATES INDEMNITY AND
CASUALTY COMPANY, LTD., and
AMERISURE MUTUAL INSURANCE
COMPANY,

      Defendants.
_____/

## OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS UNITED STATES INDEMNITY AND CASUALTY COMPANY, LTD. AND AMERISURE MUTUAL INSURANCE COMPANY, AND SCHEDULING STATUS CONFERENCE

  The issue presented by the motion for summary judgment presently before the Court is whether construction bonds issued by defendant United States Indemnity and Casualty Company, Ltd. (USIC) and guaranteed by defendant Amerisure Mutual Insurance Company ought to be viewed as a performance bond – that is, made for the benefit of contractors and owners who contracted with the obligor, CBN Steel Construction, Inc., for work to be done by CBN – or a payment bond – that is, made for the benefit of CBN's suppliers, materialmen, and subcontractors who did work for CBN. The Court finds that USIC issued bonds of both types, but there is no doubt that one of the bonds is the latter type, and defendants USIC and Amerisure are liable on the bond to Prospect Steel for CBN's failure to pay for structural steel Prospect fabricated and furnished to CBN on a construction project when CBN defaulted on payment. The defendants' motion for summary

judgment, therefore, will be denied and the Court declares that coverage under the bond inures to the benefit of the plaintiffs.

I.

This case involves a dispute that arose during the construction of the School of Public Health at the University of Michigan. Walbridge was either the general contractor or construction manager on the job. There is a factual dispute as to the precise nature of Walbridge's role, but it is not material for the purpose of this motion. Walbridge contracted with CBN to perform several aspects of the job, including '[f]urnishing and installing all structural steel" for the project. Defs.' Mot. Summ. J. Ex. 2, Walbridge/CBN Contract. Under the contract between Walbridge and CBN, CBN agreed to "furnish all labor materials, tools, equipment, supervision and services necessary to properly prosecute and complete the work identified and described in Exhibit D attached hereto (the 'Work')." Defs.' Mot. Summ. J. Ex. 2, Walbridge/CBN Contract. Exhibit D to the contract, titled "Scope of Work," contains the following provisions:

> Provide all necessary equipment, labor, and materials necessary to perform the structural steel, metal deck, steel joist and related work as shown on the Contract Documents. This work shall include, but not be limited to:
> . . .
> 2. Furnishing and installing all structural steel, metal deck (for the new tower building and connector building and all related work as specified and described[)].
> 3. Furnishing and installing all metal deck accessories, including but not limited to concrete stops at the perimeter and at interior openings, joint covers, closure strips, closures of all types, expansion joints, etc. for the entire building.
> 4. Furnishing and installing all shear studs, and any miscellaneous support steel as may be required for the complete installation of the metal deck for the entire building, including at Phase 1 steel.
> 5. Furnishing and installing all steel on the Structural Drawings (bent plate, girts, braces, etc.) unless specifically excluded as described below under "Excluded From the Scope of Work".
> 6. Furnish and install expansion anchors at all girts as shown.

Defs.' Mot. Summ. J. Ex. 2, Walbridge/CBN Contract.

Walbridge's bid specifications required the contractors to furnish "performance and payment bonds covering the faithful performance of the contract and the payment of all obligations arising thereunder. . . . The 'Performance Bond and Payment Bond' will be equal to one hundred (100%) percent of the total amount payable by the terms of the contract." Pl.'s Resp. Ex. 5, Bailey Aff. Ex. 5-B.

The structural steel portion of the contract between Walbridge and CBN was $2,664,198, which included the steel fabrication and steel erection work. CBN in turn subcontracted with Prospect Steel for Prospect to fabricate the steel that CBN needed to perform its agreement with Walbridge for $1,173,070. Under that agreement, Prospect "agreed to furnish materials, labor and equipment in the performance of certain work in connection with the construction of the University of Michigan, School of Public Health Project." Defs.' Mot. Summ. J. Ex. 3, Fabrication Subcontract Agreement.

Apparently CBN could not obtain bonds in the full amount of $2,664,198. CBN claims it notified Walbridge of this fact and suggested that it could bond the steel erection work if Prospect was required to bond the fabrication portion of the work. The defendants have submitted an affidavit from Cynthia Nestor, president and sole shareholder of CBN, asserting that Walbridge agreed to this idea. On March 17, 2004, USIC's attorney sent a letter to University of Michigan's Offices of Construction stating that USIC would provide a bond to CBN if CBN received the contract:

> If CBN Steel Construction is awarded the above captioned project, United States Indemnity & Casualty Company, Ltd. is in a position to execute a performance and payment bond for the installation portion of the project, and the fabrication subcontractor will issue a dual oblige bond for their portion of the work.

Defs.' Mot. Summ. J. Ex. 6, Letter from S. Moceri to Regents of UM (Mar. 17, 2004). Ms. Nester's affidavit states that she contacted Prospect and requested that Prospect obtain a bond for the steel fabrication portion of the work, and on September 15, 2004, Prospect obtained a payment bond from St. Paul Fire and Marine Insurance Company. That bond lists Prospect Steel as the principal and CBN Steel as the obligee and is in the amount of $1,173,070. The bond requires Prospect to "promptly make payment directly or indirectly to all Claimants as defined in this bond, for all labor, material and equipment used in the performance of the Subcontract . . . . A Claimant is defined as an individual or entity having a direct contract with the Principal to furnish labor, materials or equipment for use in the performance of the Subcontract or any individual or entity having valid lien rights which may be asserted in the jurisdiction where the Project is located." Defs.' Mot. Summ. J. Ex. 4, St. Paul/Prospect Subcontract Payment Bond.

On September 28, 2004, USIC issued performance and payments bonds to CBN for its portion of the work. CBN was named as the principal, USIC was named as the surety, and Walbridge was named as the obligee in both bonds. The bonds each were in the amount of $1,491,128, and each described the subcontract as "University of Michigan School of Public Health Erect Structural Steel." Prospect's Supp. Br., Ex. A & B. The performance bond stated:

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if principal shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

Prospect's Supp. Br., Ex. A. The payment bond contains different terms. It specifies:

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

(1) A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the subcontract.

(2) The above-named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to that judgment for such sum or sums as may be justly due claimant, and have execution thereon.

Prospect's Supp. Br., Ex. B.

On September 28, 2004, Amerisure Insurance agreed to insure the USIC/CBN Bond:

For value received, Amerisure Mutual Insurance Company (hereinafter referred to as the "Reinsurer") agrees that in the event the company [USIC] defaults on payments required under the attached Bond after exhaustion by Obligee of all other remedies, the Reinsurer will immediately become liable for 100% of any loss due and payable by the Company to the Obligee under the Bond to which this Rider is attached and that the Reinsurer will make payment directly to any Claimant(s) or the Obligee above.

Defs.' Mot. Summ. J. Ex. 5, USIC/CBN Subcontract Bond.

The contract between Walbridge and CBN was executed on December 7, 2004. CBN started work on the project but went out of business before the work was completed. The plaintiff asserts that CBN defaulted on its subcontract with Prospect by failing to pay what it owed. The plaintiff has submitted the affidavit of John Bailey, the president of Prospect Steel, who states that CBN owed $604,000 for steel that had been fabricated and delivered by Prospect at the time CBN went out of business. Prospect states it completed its obligations as required under the contract is spite of CBN's default.

Prospect Steel submitted a claim against the USIC/CBN bond. Mr. Bailey says he had numerous conversations with USIC employees about the claim. Mr. Bailey states USIC offered to

pay certain portions of the claim and never suggested the USIC bond did not cover the claim. Apparently the claim was denied.

Walbridge filed this suit for the use and benefit of Prospect Steel on September 23, 2005. The main defendants, as noted, are CBN, USIC, and Amerisure. There are also various counter claims, cross claims, and third-party claims that are not relevant for the purpose of the present motion.

USIC filed a motion for summary judgment contending that the bonds it issued do not benefit Prospect Steel because the bond issued to CBN covers only steel erection work and does not include the fabrication work. According to USIC, the bond it issued described the scope of covered work as "University of Michigan School of Public Health Erect Structural Steel." USIC states the bond issued to Prospect by St. Paul covers the work at issue.

The plaintiff disputes this claim and insists that the bond clearly states that USIC agrees to pay every "claimant" who is not paid within 90 days of the date on which the claimant's last work was provided. A claimant is one having a direct contract with the principal for labor or material that was used or reasonably required for use in performance of the contract. Prospect Steel had a direct contract with CBN and provided labor and materials for performance of that contract. Furthermore, CBN was obligated under its contract with Walbridge to erect structural steel, which it could not do without structural steel.

The Court heard the parties' oral argument in open court on February 1, 2007 and directed the filing of supplemental briefs on the difference between a performance bond and a payment bond. Although the defendant's supplemental brief was not on point, the supplemental brief filed by the

plaintiff addressed that issue. Having received the supplemental briefs, the motion is ready for decision.

II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A motion for summary judgment under Rule 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In this case, the parties agree that the facts are not in dispute, and they agree that the bonds are not ambiguous. The case is before the Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and the parties agree that Michigan law furnishes the rules for decision. Under Michigan law, "the interpretation of an unambiguous contract is a matter of law for the court." *Marentette v. Local 174, United Auto Aerospace and Agric. Workers of Am.*, 907 F.2d 603, 612 (6th Cir. 1990). Therefore, summary judgment is an appropriate procedure to resolve this dispute.

The plaintiff, Walbridge, has brought this action against a surety for the benefit of Prospect Steel, a subcontractor on the project to CBN. "A surety is one who undertakes to pay money or take

any other action if the principal fails therein." *Will H. Hall & Son, Inc. v. Ace Masonry Constr., Inc.*, 260 Mich. App. 222, 228-29, 677 N.W.2d 51, 55 (2003). "'The liability of a surety is limited by the scope of the liability of its principal and the precise terms of the surety agreement.'" *Ibid.* (*quoting Bd. of Governors of Wayne State Univ. v. Bldg. Sys. Hous. Corp.*, 62 Mich. App. 77, 85, 233 N.W.2d 195 (1975)); *Detroit v. Blue Ribbon Auto Drivers' Ass'n*, 254 Mich. 263, 266, 237 N.W. 61, 63 (1931).

"Although a surety bond is not a policy of insurance it is ordinarily construed in similar fashion." *William C. Roney & Co. v. Fed. Ins. Co.*, 674 F.2d 587, 590 (6th Cir. 1982). "The . . . obligation as a surety for hire is in the nature of insurance; 'and courts in the construction of its contracts usually invoke rules applicable to contracts of insurance.'" *Blue Ribbon*, 254 Mich. at 266, 237 N.W. at 63; *Gen. Elec. Credit Corp. v. Wolverine Ins. Co.*, 120 Mich. App. 227, 233-34, 327 N.W. 2d 449, 452 (1982) (stating that surety agreements are "governed by the rules applicable to insurance contracts"). "Bonds of sureties for hire are more strictly construed against them than are bonds against gratuitous sureties." *Blue Ribbon*, 254 Mich. at 266, 237 N.W. at 62.

Under Michigan law, contracts, including insurance policies and thus surety agreements, must be enforced according to their plain language. "[P]olicy language in an insurance contract is to be accorded its ordinary meaning unless it is apparent from a reading of the whole instrument that a different or special meaning was intended." *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 943-44 (6th Cir. 1993) (citing *Sump v. St. Paul Fire & Marine Ins. Co.*, 21 Mich. App. 160, 175, 175 N.W.2d 44 (1970), *disapproved of on other grounds by Lewis v. Metropolitan Life Ins. Co.*, 397 Mich. 481, 245 N.W.2d 9 (1976)). Ambiguity may not be read into a contract where it does not exist:

> When interpreting insurance policies under Michigan law, we are guided by a
> number of well-established principles of construction. Foremost among those is the
> maxim that an insurance policy must be enforced in accordance with its terms.
> *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 207, 476 N.W.2d 392
> (1991). A court may not read ambiguities into a policy where none exist.

*Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.*, 445 Mich. 558, 519 N.W.2d 864, 868 (1994), *overruled on other grounds by Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776 (2003). An unambiguous contract must be enforced unless it violates public policy. *Vanguard Ins. Co. v. Clarke*, 438 Mich. 463, 471, 475 N.W.2d 48 (1991), *overruled on other grounds by Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776 (2003). "Where a contract is clear and unambiguous, parties' intentions are to be determined from the four corners of the contract." *Vencor, Inc. v. Std. Life & Accident Ins. Co.*, 317 F.3d 629, 635 (6th Cir. 2003). Extrinsic evidence contradicting the plain language of the contract may not be admitted. "[T]his rule 'should be rigidly enforced in case of bonds, if at all.'" *Brandt v. Vanderveen*, 213 Mich. 121, 137, 182 N.W. 35, 41 (1921).

Michigan courts require exclusions in insurance policies to be clearly expressed. *Auto Owner's Ins. Co. v. Ellegood*, 149 Mich. App. 673, 676, 386 N.W.2d 640, 642 (1986). The insurer has the burden of proving an exclusion from coverage. *Farmer's Bank & Trust Co. v. Transamerica Ins. Co.*, 674 F.2d 548, 551 (6th Cir. 1982).

A surety's obligations are coextensive with its principal's obligations under the contract. *See Will H. Hall & Son, Inc. v. Ace Masonry Constr., Inc.*, 260 Mich. App. 222, 229, 677 N.W.2d 51 (2003); *In re MacDonald Estate*, 341 Mich. 382, 387, 67 N.W.2d 227, 229 (1954). When a construction contract is incorporated by reference into a performance bond, the two are to be read together. *Hunters Pointe Partners Ltd. P'ship v. U.S. Fid. & Guar. Co.*, 194 Mich. App. 294, 297,

486 N.W.2d 136, 138 (1992) (stating that "the courts read the performance bond together with the construction contract and found that a surety could be held liable on the performance bond for a breach of the construction contract by the contractor that results in latent defects"). "[A] surety's liability corresponds exactly with that of its principal. Therefore, if the principal can be held liable for breach of a construction contract, so may the surety." *Id.* at 298 n.2, 486 N.W.2d at 138 n.2 (*citing Ackron Contracting Co. v. Oakland Co.*, 108 Mich. App. 767, 772, 310 N.W.2d 874 (1981)).

USIC has issued two separate bonds in this case naming CBN as principal – a performance bond and a payment bond – and the purpose of each is distinct.

> Generally speaking, contractors' bonds are of two types, sometimes combined in a single bond: performance bonds and labor and material payment bonds. A performance bond guarantees that the contractor will perform the contract, and usually provides that, if the contractor defaults and fails to complete the contract, the surety can itself complete the contract or pay damages up to the limit of the bond. A labor and material payment bond guarantees the owner that all bills for labor and materials contracted for and used by the contractor will be paid by the surety if the contractor defaults. The purpose of a payment bond or provision is to protect the equity of the owner and his property against the claims of unpaid subcontractors or suppliers.

17 Am. Jur. 2d, *Contractors' Bonds* § 1 at 747 (1990) (footnotes omitted). As the Michigan Supreme Court explained:

> The surety of a labor and material payment bond agrees to pay parties furnishing labor and materials to the project if the contractor is unable. A performance bond assures the lender and owner of the project that the construction will be completed by the surety if the contractor fails to complete it.

*U. S. Fid. and Guar. Co. v. Black*, 412 Mich. 99, 107 n.1, 313 N.W.2d 77, 79 n.1 (1981).

An obligee generally has no right to recover from a surety on a payment bond for money owed by the principal to material suppliers because the bond is written for the benefit of "claimants," usually defined as the labor and materialmen who deal directly with the subcontractor/principal.

*See, e.g. Ribeira & Lourenco Concrete Const. v. Jackson Health Care Ass'n*, 254 N.J. Super. 445, 451, 603 A.2d 976, 980 (1992) (observing that, "[g]enerally, an obligee under a labor and material payment bond is not entitled to payments for labor and material paid by the obligee who completes the contract after the contractor's default") (citing 13 Couch, *Cyclopedia of Insurance Law* 2d § 47:232 at 373 (1982)). However, a claimant on a payment bond has a right to recover from the surety when the principal fails to pay for labor and materials furnished in connection with the project by the claimant. *Id.* at 452, 603 A.2d at 980 ("With respect to the claims of labor and materialmen, it is immaterial that the principal contractor has defaulted and that the obligee is completing the performance of the contract. Accordingly, the surety of the defaulting contractor is liable for materials which the contractor had purchased and which were used by the obligee in completing the contract after such default.") (quoting Couch §47:232).

If the principal/subcontractor fails to complete its part of the project, the obligee may recover the expenses of completing it from the surety under a performance bond. It has been held, however, that "[a] subcontractor does not perform its contractual obligations for purposes of a performance bond until it pays for all the labor and materials used in completing its work." *Mai Steel Serv., Inc. v. Blake Constr. Co.*, 981 F.2d 414, 421 (9th Cir. 1992).

Defendant USIC argues in this case that it has limited its bond issued to CBN to the erection of the structural steel; since Prospect's job was fabrication and not erection, USIC contends that it has no obligation to Prospect and Prospect must look to St. Paul Fire and Marine, from whom it obtained a bond, for relief. This argument makes little sense and contradicts the plain language of the surety bonds in this case.

Under its contract with Walbridge, CBN agreed to "furnish all labor materials, tools, equipment, supervision and services necessary to perform the structural steel, metal deck, steel joist and related work" listed in exhibit D to the contract. Defs.' Mot. Summ. J. Ex. 2, Walbridge/CBN Contract. Exhibit D requires CBN to "[p]rovide all necessary equipment, labor, and materials necessary to perform the structural steel, metal deck, steel joist and related work," including "installing all structural steel" and "installing all steel on the Structural Drawings." *Ibid*. Although CBN contracted some of this work out to Prospect, CBN was still bound to ensure the work was completed.

The USIC performance and payment bonds each refer to and incorporate the Walbridge/CBN contract. The undisputed evidence establishes that the parties entered into only one contract on March 29, 2004. That is the contract referenced above. That "subcontract is by reference made a part" of the bonds, and that subcontract required CBN to "furnish all labor, materials, tools, equipment, supervision and services necessary to perform the structural steel, metal deck, steel joist and related work."

The payment bond defines a claimant as follows:

> A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the subcontract.

Prospect's Supp. Br., Ex. B. Prospect qualifies as a claimant under this definition. Prospect had a direct contract with CBN for the labor and materials according to the Fabrication Subcontract Agreement. Under that agreement, Prospect "agreed to furnish materials, labor and equipment in the performance of certain work in connection with the construction of the University of Michigan,

School of Public Health Project." Defs.' Mot. Summ. J. Ex. 3, Fabrication Subcontract Agreement. The labor and materials provided by Prospect were used and required for the performance of both the contract between Prospect and CBN, and the contract between CBN and Walbridge. For Prospect to perform under its contract with CBN, it had to provide labor and materials. For CBN to perform under its contract with Walbridge, it had to either provide labor and materials or contract with someone else to do so. That is exactly what CBN did: it contracted with Prospect to perform some of work CBN was obligated to perform for Walbridge. Prospect is a claimant under the payment bond.

The defendants make much of the fact that the subcontract is described as one to "Erect Structural Steel." However, the evidence submitted indicates that the parties entered into only one contract on March 29, 2004. The contract between Walbridge and CBN is 64 pages long and obligated CBN to do a number of things. It was reasonable for the parties to briefly describe the contract as one to erect structural steel, since that is one of the things CBN was required to do. Accepting USIC's argument would mean that only part of the subcontract is incorporated by reference. That is an unreasonable interpretation of the bond agreements and would essential exclude coverage in a number of instances. However, "the insurer has the burden of proving exclusions," *Farmers Bank & Trust Co. v. Transamerica Ins. Co.*, 674 F.2d 548, 551 (6th Cir. 1982), and the defendants have failed to carry that burden here.

The defendants also state that Prospect's obtaining a bond of its own from St. Paul Fire and Marine evidences an intent that it not be covered under the bond obtained by CBN. However, the bond Prospect obtained was a payment bond for the benefit of its own labor and material suppliers and the owner should construction liens be filed by them. It is nonsense to suggest that Prospect

should turn to its own surety company to guarantee payment to itself. Moreover, Prospect's agreement to obtain its own payment bond is not inconsistent with CBN's agreement to bond the erection part of the project separately. Under that arrangement, CBN retained the obligation to pay its own labor and materialmen, including Prospect, and USIC guaranteed that payment with its payment bond. However, the laborers and materialmen who contracted with Prospect could look to Prospect's payment bond surety, which reduced the risk on the project as a whole to USIC, who limited the penal sum on the performance and payment bonds accordingly.

Walbridge has sued the sureties under the payment bond "for the use and benefit" of Prospect. The payment bond expressly allows it to do so. However, Walbridge also is entitled to look to the sureties for payment in its own right under the performance bond, since CBN failed to complete performance by failing to "pay[] for all the labor and materials used in completing its work," *Mai Steel Serv.*, 981 F.2d at 421, which is part of its obligation to "promptly and faithfully perform [the] subcontract." Prospect's Supp. Br., Ex. A.

Under either bond, USIC has the obligation to make good on CBN's failure to pay for the structural steel fabricated by Prospect for the University of Michigan School of Public Health construction project. Its motion for summary judgment seeking a declaration to the contrary therefore must be denied.

III.

The Court finds that United States Indemnity & Casualty Company, Limited is obligated for the debt owed to Prospect Steel Company for steel fabrication for the University of Michigan School of Public Health construction project under its bond number 200-0850.

Accordingly, it is **ORDERED** that the motion for summary judgment by defendants United States Indemnity & Casualty Company, Limited and Amerisure Mutual Insurance Company [dkt #45] is **DENIED**.

It is further **ORDERED** that counsel shall appear for a status conference at the Court's chambers on **at 2 p.m. on Monday, September 17** to discuss further case management.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 27, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 27, 2007.

s/Felicia M. Moses
FELICIA M. MOSES